UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO TEACHERS UNION, LOCAL 1, AFT, and MOSELEAN PARKER, | ) ) ) |
| Plaintiffs, | ) No. 1:22-CV-02659 ) |
| v. | ) ) |
| | ) Judge Edmond E. Chang |
| EDUCATORS FOR EXCELLENCE, INC., | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendant Educators for Excellence, Inc. (which calls itself E4E) allegedly recruited and contributed money to candidates running for office in a Chicago Teachers Union, Local 1 (CTU) election. CTU and a CTU member, Moselean Parker, sued E4E, arguing that the Plaintiffs have a right to union elections without interference and alleging that E4E will continue to interfere in future CTU elections. R. 1, Compl.[1] The Plaintiffs brought claims under the Labor-Management Reporting and Disclosure Act and under Illinois state law, seeking injunctive and declaratory relief. *Id.* E4E moved to dismiss the initial complaint, R. 14, Def.'s Mot., and CTU filed an amended complaint. R. 21, Am. Compl. E4E now moves to dismiss the amended complaint for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, Fed. R. Civ. P. 12(b)(6). R. 24, Def.'s Mot. For the reasons discussed

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

below, jurisdiction is secure, but the amended complaint fails to adequately state a claim.

## I. Background

For purposes of this motion, the Court accepts as true the allegations in the amended complaint.[2] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). According to the complaint, E4E is a not-for-profit corporation with the "goal of limiting the power of teacher unions and limiting the scope of the bargaining that teacher unions may conduct." Am. Compl. ¶¶ 15–16. To this end, E4E recruits and promotes candidates in union elections that sympathize with E4E's goal. *Id.* ¶ 17.

In May 2022, CTU held an election for union officers. Am. Compl. ¶ 13; R. 27, Pls.' Resp. at 2. E4E allegedly contributed money to recruit and promote candidates in this election. Am. Compl. ¶¶ 23, 49. CTU and a CTU member, Moselean Parker—who ran for a union-officer position and was elected—sued E4E, alleging that E4E had contributed money to candidates and thus unlawfully interfered with the election.[3] *See* R. 25, Def.'s Br. at 3; R. 1, Compl. CTU and Parker also alleged that E4E would continue contributing money to candidates and interfering in future CTU elections. Am. Compl. ¶¶ 6, 14–17, 24, 29.

---

[2]This section also includes factual context provided by E4E in its briefing—which CTU and Parker do not dispute—to help orient the reader.

[3]CTU and Parker filed an initial complaint a day before the May 2022 election, which E4E moved to dismiss. R. 1, 14. The Court then granted CTU and Parker's motion to file an amended complaint. R. 19, 20.

E4E now moves to dismiss the amended complaint under both Rule 12(b)(1) and 12(b)(6), arguing that subject matter jurisdiction does not apply and that the amended complaint fails to state a claim. Def.'s Mot.

## II. Legal Standard

A motion under Rule 12(b)(1) tests whether the Court has subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). E4E raises a facial attack, "which requires only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021) (cleaned up)[4]; *id.* ("A facial attack tests whether the allegations, taken as true, support an inference that the elements of standing exist," whereas a factual attack "tests the existence of jurisdictional facts underlying the allegations." (cleaned up)); *see* Def.'s Br. at 2 n.1 (treating as true the complaint's factual allegations for purposes of its motion and focusing on how CTU and Parker have not "pled any actual injury"). Thus, in assessing E4E's jurisdiction-based motion, the Court accepts all well-pleaded factual allegations as true and draws all

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

3

reasonable inferences in favor of CTU and Parker. *See Prairie Rivers Network*, 2 F.4th at 1007.

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan*, 570 F.3d at 820. "A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

III. Analysis

A. Jurisdiction

E4E raises two jurisdictional challenges. First, E4E asserts that CTU and Parker lack standing "to pursue their claims because they have not pled any actual injury." Def.'s Br. at 2.[5] This is not so. *See Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (stating that at the pleadings stage, the complaint "need only plausibly suggest each element of standing, with the court drawing all reasonable inferences in the plaintiff's favor" (cleaned up)). Because CTU and Parker seek prospective relief—injunctive and declaratory relief to bar E4E from interfering in future CTU elections—they must allege a "'real and immediate' threat of future injury." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *Robinson v. City of Chicago*, 868 F.2d 959, 965–66 (7th Cir. 1989) (applying the same standing analysis to a claim for declaratory relief).[6]

Here, the amended complaint alleges that E4E "has the goal of limiting the power of teacher unions" and "seeks to recruit and promote" certain candidates for CTU elections that would be aligned with E4E's goals. Am. Compl. ¶¶ 16–17. E4E "adopted a strategic plan … to influence teacher unions," and then "sought to recruit

---

[5]The other two elements of Article III standing—a causal connection between the injury and the defendant's conduct, and redressability—are not at issue here.

[6]CTU and Parker do not challenge the already-conducted May 2022 election. Pls.' Resp. at 4.

persons to run for union office in Plaintiff CTU's election of May 20, 2022." *Id.* ¶¶ 22–23. And E4E will allegedly "continue[] to have the purpose of promoting candidates for union office in Plaintiff CTU" and "will continue to apply and contribute its moneys directly or through in-kind assistance" in future CTU elections to promote that purpose. *Id.* ¶ 24. According to CTU and Parker, this conduct impairs union members' rights, "including their right to vote for officers of their own choosing." *Id.* at 9.

Taken together, these allegations sufficiently plead a real and immediate threat of future injury—that E4E will interfere with and thus impair the integrity of future CTU elections. E4E unpersuasively asserts that the alleged election interference is "too hypothetical," relying on a district court decision, *Hero v. Lake County Election Bd.*, 561 F. Supp. 3d 786 (N.D. Ind. 2021). Def.'s Br. at 12. In *Hero*, the plaintiff—who had tried to run for a town council position—asserted that the election board had unlawfully removed him from the election ballot, and thus filed suit for declaratory and injunctive relief. 561 F. Supp. 3d at 788. The court determined that the plaintiff lacked standing because he relied on a "speculative chain of possibilities," including that the election board—whose composition had already changed since the plaintiff's removal from the ballot—would make the same decision about the plaintiff's candidacy. *Id.* at 791 (cleaned up). Unlike in *Hero*, the amended complaint here includes concrete allegations that E4E—with its continued (alleged) purpose of interfering in union elections and a strategy plan to influence teacher unions—will interfere in future CTU elections, in the same way that it interfered in the May 2022

6

election. CTU and Parker have sufficiently pleaded a threat of future injury for Article III standing.

Second, E4E argues that no federal-question jurisdiction exists. Def.'s Br. at 5–9. But this argument fails; the Court has federal-question jurisdiction because CTU and Parker bring federal claims under a particular section of the Labor-Management Reporting and Disclosure Act (often shortened to the LMRDA), codified at 29 U.S.C. § 481. Am. Compl. ¶¶ 5–6, 44–58. E4E contends that there is no federal question jurisdiction because the provisions of the LMRDA invoked by the complaint contain no private cause of action. Def.'s Br. at 4–9.

But whether a private cause of action exists is a *merits* question—not a jurisdictional one. "It is firmly established … that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998); *see also id.* ("Jurisdiction is not defeated by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." (cleaned up)). Rather, so long as the complaint is "drawn so as to claim a right to recover under the Constitution and laws of the United States," the Court has federal question jurisdiction. *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 555 (7th Cir. 2021) (quoting *Bell v. Hood*, 327 U.S. 678, 681 (1946)). Although exceptions exist when the alleged federal claim is "made solely for the purpose of obtaining jurisdiction" or "is wholly insubstantial and frivolous," that

7

is not the case here. *Steel Co.*, 523 U.S. at 89 (cleaned up). E4E's motion to dismiss for lack of subject matter jurisdiction is denied.

### B. Adequacy of Claim

On the merits, however, E4E is correct that CTU and Parker have failed to adequately state a claim upon which relief may be granted. CTU and Parker argue that they have stated a claim under the LMRDA, 29 U.S.C. § 481(c), (g), as well as under state law. Pls.' Resp. at 8–11. Turning first to the LMRDA, Section 481 of Title 29 of the United States Code—which codifies the pertinent part of Title IV of the LMRDA—sets out requirements that unions must follow when conducting union elections. Subsection (c) generally governs a union's duties to distribute candidates' campaign literature and to allow candidates access to membership lists,[7] and also provides that "[a]dequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots." 29 U.S.C. § 481(c). Subsection (g) governs funding for candidates' campaigns and provides that "no moneys of an employer shall be contributed or applied to

---

[7]For instance, Section 481(c) provides that unions "shall be under a duty, enforceable at the suit of any bona fide candidate for office in such labor organization in the district court of the United States in which such labor organization maintains its principal office, to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization and to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members …."

promote the candidacy of any person in any election subject to the provisions of this subchapter."[8] § 481(g).

CTU and Parker argue that E4E deprived them of "[a]dequate safeguards" for a fair election and unlawfully contributed money to promote candidates, in violation of Section 481(c) and (g), and that the LMRDA provides them with a private cause of action to enforce those provisions against E4E. *See* Am. Compl. ¶¶ 50–51; Pls.' Resp. at 9–11. But the enforcement mechanism for Section 481 is set out in Section 482, which provides that a union member (who has taken steps to exhaust available remedies) "may file a complaint with the Secretary [of Labor]" to allege "the violation of any provision of section 481." 29 U.S.C. § 482(a). The Secretary then must investigate the complaint and, "if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied," shall "bring a civil action against the labor organization." 29 U.S.C. § 482(b). As the Supreme Court explained in *Calhoon v. Harvey*, Section 482 sets up the "*exclusive* method for protecting Title IV rights," as Congress "decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest." *Calhoon v. Harvey*, 379 U.S. 134, 140 (1964) (emphasis added). And this enforcement mechanism provides only *post*-election relief—it does not provide avenues for pre-election enforcement in federal courts. *Id.*; *see also Driscoll v. Int'l Union of Operating Eng'rs, Local 139*, 484 F.2d 682, 688 (7th Cir. 1973) (noting that *Calhoon* was a pre-election case "requir[ing]

---

[8] E4E does not dispute that it is an "employer" within the meaning of the LMRDA. *See generally* Def.'s Br.; R. 28, Def.'s Reply.

that the election first be held before any Title IV remedies be made available to the plaintiffs"). The Supreme Court reasoned that Congress, "with one exception …, decided not to permit individuals to block or delay union elections by filing federal-court suits for violations of Title IV." *Calhoon*, 379 U.S. at 140. That "one exception" is contained in Section 481(c), which permits pre-election suits by bona fide candidates to enforce their rights to equal treatment in the distribution of campaign literature and access to member lists. *Id.* at 140 n.13; 29 U.S.C. § 481(c). That exception is not at issue here.

Thus, nowhere in Sections 481 or 482 is there an express private cause of action for the pre-election relief that CTU and Parker seek. Nor is there, as CTU and Parker argue, any "implied" cause of action. *See* Pls.' Resp. at 9. An implied cause of action exists only when "Congress intended to create the private right of action asserted." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979); *see Int'l Union of Operating Eng'rs, Local 150 v. Ward*, 563 F.3d 276, 282–83 (7th Cir. 2009) ("[I]t is Congress, not this or any other court, that creates private causes of action to enforce federal law," and thus the court's task is to determine whether the language of the statute "evinces Congress's intent to create, expressly or impliedly, a private cause of action for labor organizations to enforce its provisions."). As already explained, there is nothing to suggest that Congress (with one explicit exception discussed above) created an

10

implied pre-election private cause of action to enforce provisions of Title IV.[9] *See Calhoon*, 379 U.S. at 140.

Nevertheless, CTU and Parker rely on *International Union of Operating Engineers v. Ward*, arguing that the Seventh Circuit there held that a union has an "implied right to sue to enforce" the LMRDA. Pls.' Resp. at 9. But *Ward* involved an altogether different section of the LMRDA—Section 501—which governs the fiduciary duties of labor organization officers. 563 F.3d at 278–79. The Seventh Circuit examined the statutory text of Section 501 and concluded—noting the Section's specific duty-creating language and language implying the creation of a federal remedy for the union—that the text evinced congressional intent to provide unions a private federal cause of action. *Id.* at 283–89.[10] No such language is contained in the provisions invoked here. And indeed, that a different provision in Section 481(c) *does* contain language creating a private cause of action strongly supports that in the

---

[9]CTU and Parker rely on *Guzman*, a Second Circuit case, to argue that Section 481 is privately enforceable before or "between" elections. Pls.' Resp. at 4. But *Guzman* involved the exception in Title IV that *expressly* allows suits by candidates to enforce their rights as to campaign literature and member lists. *Guzman v. Local 32B–32J, Serv. Emps. Int'l Union*, 151 F.3d 86, 89 (2d Cir. 1998).

[10]In explaining that the text of Section 501 created an implied cause of action, *Ward* pointed to statutory text that required union officers to "account to the organization for any profit received" and that voided union organizational documents that purported to "relieve any [union officer] of *liability* for breach of the duties" in Section 501. *Ward*, 563 F.3d at 287 (emphasis added). The accounting duty and the reference to "liability" were textual clues that Congress had implied a right of action. No similar language appears in Section 481.

11

provisions at issue here—which *lack* any similar language—Congress did not intend to create a cause of action.

Because Section 481 of the LMRDA provides no private federal cause of action for CTU and Parker, their LMRDA claims are dismissed for failure to state a claim upon which relief may be granted. CTU and Parker also bring state law claims,[11] but they merely invoke the same LMRDA provisions and broadly assert that these provisions confer upon them a "protectible interest" that they can enforce under state law.[12] Am. Compl. ¶¶ 5, 25–43; *see* Pls.' Resp. at 3. The only state law authority CTU

---

[11] Because the Court had federal question jurisdiction over the LMRDA claims, the Court has supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367. And because the LMRDA claims have been dismissed, the Court could relinquish jurisdiction over the state law claims. *See Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (per curiam); 28 U.S.C. § 1367(c)(3). But none of the parties requested that supplemental jurisdiction be relinquished. As CTU and Parker have amended their complaint, they had ample opportunity to make that request. Further, CTU and Parker argue that diversity jurisdiction exists, Pls.' Resp. at 7–8, indicating that they want this Court to decide all of their claims. The Court thus declines to relinquish supplemental jurisdiction over the state law claims.

Additionally, the parties dispute whether diversity jurisdiction exists. Def.'s Br. at 9–11; Pls.' Resp. at 7–8. Because federal question jurisdiction exists and supplemental jurisdiction over the state law claims is retained, the diversity jurisdiction dispute need not be resolved.

[12] E4E argues that Section 483 of the LMRDA preempts any state law claims, because under Section 483, the "remedy provided by this subchapter for challenging an election already conducted"—the enforcement mechanism detailed in Section 482—"shall be exclusive." *See* Def.'s Br. at 11; Def.'s Reply at 4. This preemption argument is unavailing. Section 483 also provides that "[e]xisting rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections *prior* to the conduct thereof *shall not be affected* by the provisions of this subchapter." 29 U.S.C. § 483 (emphases added). In other words, although CTU and Parker do not have a private federal cause of action to enforce Section 481, any existing rights and remedies allowing pre-election enforcement under state law are not preempted by Section 483.

12

and Parker provide is one Illinois case, *Van Daele v. Vinci*, 282 N.E.2d 728 (Ill. 1972).[13] Pls.' Resp. at 6, 8. But that case involved association members who were expelled from a retail association without a fair disciplinary proceeding. The Illinois court held that stripping the plaintiffs of their membership (which provided the members with substantial economic benefits) without a fair proceeding denied the plaintiffs' due process rights. *Id.* at 732. CTU and Parker do not contend that they have been deprived of due process. *Van Daele* thus does not support that state law provides CTU and Parker a cause of action, and ultimately, because CTU and Parker's state law claims hinge on their (now dismissed) federal claims, the state law claims, too, are dismissed.

In sum, even after drawing reasonable inferences in CTU and Parker's favor, the amended complaint fails to sufficiently state any LMRDA or state law claims.

### IV. Conclusion

Because CTU and Parker have failed to sufficiently allege their LMRDA and state law claims, E4E's motion to dismiss the amended complaint is granted. And because CTU and Parker have already been granted an opportunity to amend their

---

[13]CTU and Parker assert that they have "an implied right to enforce the statutory provisions in 29 U.S.C. § 481(c) and (g) under state law," because CTU's "constitution and bylaws incorporate these provisions by operation of law." Pls.' Resp. at 8. But CTU and Parker fail to articulate what state law provides them with a cause of action to enforce CTU's internal bylaws and constitution against an external party like E4E. *See id.*

initial complaint, R. 20, and identify no possible ground to amend the complaint again, the dismissals are with prejudice.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 21, 2024